KIMBERLY H. HOOPER (Widow) and REVEREND JERRY HOOPER (Father), Administrators of the Estate of TIMOTHY NELSON HOOPER, Plaintiffs v. PIZZAGALLI CONSTRUCTION CO., ACME PLUMBING AND HEATING, INC., WEST DURHAM MECHANICAL, INC. (Formerly COMFORT ENGINEERS, INC.), Defendants

No. 9214SC126

(Filed 2 November 1993)

**1. Labor and Employment §§ 184, 190 (NCI4th)— injury to subcontractor's employee—general contractor not liable**

A general contractor could not be held liable for the death of a plumbing subcontractor's employee who fell from a scaffold on the ground that the general contractor breached a nondelegable duty of safety owed to the decedent since (1) the general contractor did not retain control of the manner and method by which the plumbing subcontractor performed its work; (2) the plumbing work performed was not an inherently dangerous activity; and (3) use of a scaffold to perform the plumbing work was not set out in the contract and was thus totally collateral to the work as contracted.

**Am Jur 2d, Independent Contractors §§ 24, 30, 40.**

**2. Labor and Employment § 183 (NCI4th)— death of subcontractor's employee—fall from scaffold owned by another contractor—other contractor not liable**

Defendant heating and air conditioning subcontractor was not liable for the death of a plumbing subcontractor's employee who fell from a scaffold on the ground that defendant breached a duty to the decedent as an invitee where there was evidence that the scaffold was owned by defendant but there was no evidence that permission had been given to decedent to use the scaffold, and there was no evidence that defendant placed the scaffold in the work area in which decedent fell or knowingly allowed its use by decedent.

**Am Jur 2d, Independent Contractors §§ 24, 30, 40.**

**3. Judgments § 354 (NCI4th)— motion for relief from judgment— Rule 60(b) inapplicable to interlocutory judgments**

The trial court properly denied plaintiffs' Rule 60(b) motion for relief from an order granting one defendant's motion to dismiss plaintiffs' complaint where the order resolved less

than all claims in the action and was not a final judgment, since Rule 60(b) had no application to interlocutory judgments.

**Am Jur 2d, Judgments § 1053.**

4. **Pleadings § 384 (NCI4th) — dismissal of complaint — denial of motion to set aside — amendment not permitted**
    Since the trial court did not allow plaintiffs' motion to set aside an order dismissing plaintiffs' complaint, it could not allow plaintiffs' motion to amend their complaint.

**Am Jur 2d, Pleadings § 289 et seq.**

5. **Labor and Employment § 190 (NCI4th) — injury to employee — Woodson claim against employer not shown — no jurisdiction in superior court**
    Plaintiffs' forecast of evidence was insufficient to show that defendant plumbing subcontractor engaged in conduct substantially certain to cause death or injury so as to give the superior court jurisdiction under *Woodson v. Rowland* of a claim for the death of an employee who fell from a makeshift scaffold owned by another subcontractor where there was no evidence that the supervisor for defendant directed decedent to use the scaffold or expected that decedent's assigned work would be performed with the assistance of a makeshift scaffold.

**Am Jur 2d, Independent Contractors § 40.**

Appeal by plaintiffs from orders entered on 26 September 1991 and order entered 4 October 1991 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 6 January 1993.

Plaintiffs filed a complaint for the wrongful death of Timothy Hooper in Superior Court of Durham County on 3 July 1990 against defendants Pizzagalli Construction Co. (Pizzagalli), Acme Plumbing and Heating, Inc. (Acme), and Comfort Heating and Air Conditioning Company (Comfort). Acme filed a 12(b)(6) motion to dismiss on 16 August 1990. Defendants Pizzagalli and Comfort filed answers and crossclaims against Acme and against each other. The name of Comfort was changed to West Durham Mechanical, Inc. (West Durham). Amendments to the crossclaims were allowed and answers to crossclaims duly filed. On 15 January 1991, the court granted Acme's motion to dismiss plaintiffs' action, denied Acme's motion

to dismiss the crossclaim of West Durham and denied Acme's motion to dismiss the crossclaim of Pizzagalli. Defendant Pizzagalli and defendant West Durham filed motions for summary judgment on 6 September 1991. Plaintiffs moved for relief from the order granting Acme's motion to dismiss pursuant to N.C.R. Civ. P. 60(b) and moved to amend the complaint. On 13 September 1991, plaintiffs served upon defendants counter affidavits, exhibits and depositions in opposition to defendants' motions for summary judgment. By an order dated 26 September 1991, the court granted defendant Pizzagalli's motion for summary judgment, granted defendant West Durham's motion for summary judgment, denied plaintiffs' motion for appropriate relief pursuant to N.C.R. Civ. P. 60(b) and denied plaintiffs' motion to amend. Plaintiffs filed timely notice of appeal.

*Currin and Watson, P. A., by John W. Watson, Jr., for plaintiff-appellant.*

*M. Lynette Hartsell for plaintiff-appellant.*

*W. Phillip Moseley for plaintiff-appellant.*

*Newsom, Graham, Hedrick, Bryson & Kennon, by Joel M. Craig, for defendant-appellee Acme Plumbing & Heating, Inc.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert W. Griffin and Kari Lynn Russwurm, for defendant-appellee Pizzagalli Construction Co.*

*Nye, Phears & Davis, by Charles B. Nye, C. Howard Nye, and William J. Wolf, for defendant-appellee West Durham Mechanical, Inc.*

JOHNSON, Judge.

The facts pertinent to this appeal are as follows: Defendant Pizzagalli, as general contractor, executed a contract for the construction of Anylan Towers, with the owner of Duke University Medical Center. Defendant West Durham executed a subcontract agreement to provide heating, ventilation and air conditioning with the general contractor, and defendant Acme executed a subcontract agreement to provide plumbing with the general contractor.

On 6 July 1988, twenty-four year old Mr. Timothy Hooper and twenty-one year old Mr. Jimmy Rigsbee, employees of Acme, were sent to the seventh floor interstitial area on the project site

HOOPER v. PIZZAGALLI CONSTRUCTION CO.

[112 N.C. App. 400 (1993)]

to place a flange in a large valve. Unknown persons placed an unsecured scaffold board with the name "Comfort" painted on it across two I-beams leading to the duct installed by West Durham near the site of the valve. Mr. Hooper and Mr. Rigsbee performed their work thirteen feet above concrete, while standing on the scaffold board. Mr. Hooper and Mr. Rigsbee decided to work from the scaffold board in order to reach and tighten the bolts on the side of the valve opposite the uncompleted catwalk. There were no guardrails on the board and neither Mr. Hooper nor Mr. Rigsbee was secured.

Upon completion of the task, Mr. Rigsbee left the scaffold board and began to gather his tools on the solid concrete pad about twenty feet from the scaffold board. Mr. Hooper went back to the scaffold. Mr. Rigsbee looked up just as Mr. Hooper attempted to step off of the scaffold and onto the catwalk. At that time, the scaffold board began to slide and the board and Mr. Hooper began to fall. Mr. Hooper reached out and momentarily grabbed the metal toeboard of the catwalk. The toeboard bent and he rolled off, falling thirteen feet onto the concrete floor, landing on his back. Mr. Hooper was rushed to Duke Hospital where he was treated for severe head injury. He died on 8 July 1988.

The incident was reported to the Occupational Safety and Health Administration (OSHA) by Mr. Bob Carter, site superintendent for Acme. The scene of the fall was investigated by Mr. James Hall, a Safety Compliance Officer for OSHA, on 12 July 1988. At the conclusion of the investigation, Acme was cited for three non-serious and four serious violations of OSHA and fined $540.00. On 3 July 1990, plaintiffs initiated this action for the wrongful death of the decedent.

[1] By plaintiffs' first assignment of error, plaintiffs contend that the trial court committed reversible error by granting defendant Pizzagalli's motion for summary judgment because plaintiffs' forecast of evidence through pleadings, affidavits and depositions established the duty of defendant Pizzagalli and the subsequent breach of that duty which was the proximate cause of decedent's death.

The Courts of North Carolina have long recognized that a general contractor is not liable for injuries sustained by a subcontractor's employees. *Woodson v. Rowland*, 329 N.C 330, 407 S.E.2d 222 (1991). North Carolina law provides that a general contractor does not have a duty to furnish a subcontractor or the subcontrac-

HOOPER v. PIZZAGALLI CONSTRUCTION CO.

[112 N.C. App. 400 (1993)]

tor's employees with a safe place in which to work. *Brown v. Texas Company*, 237 N.C. 738, 76 S.E.2d 45 (1953). Instead, it is the duty of the subcontractor to provide himself and his employees with a safe place to work and, also, to provide proper safeguards against the dangers of the work. *Id.*

However, North Carolina does recognize a few exceptions to the general rule of no liability. These exceptions are: (1) situations where the contractor retains control over the manner and method of the subcontractor's substantive work, (2) situations where the work is deemed to be inherently dangerous, and (3) situations involving negligent hiring and/or retention of the subcontractor by the general contractor. *Woodson*, 329 N.C. 330, 407 S.E.2d 222. In the case *sub judice*, plaintiffs can recover from Pizzagalli only if plaintiffs' forecast of evidence establishes that the circumstances surrounding the decedent's accidental death place plaintiffs' claim within one of the aforementioned exceptions.

Plaintiffs contend that this action falls within two of the three exceptions. Plaintiffs argue that defendant Pizzagalli maintained sufficient control over the manner and method of Acme's work, and had a nondelegable duty to insure the safety of the decedent because scaffolding was an inherently dangerous activity.

In considering this argument, we will address each exception and its applicability. Plaintiffs argue that defendant Pizzagalli retained sufficient control over the manner and method of defendant Acme's work, and as a result, defendant Pizzagalli should be held liable for its negligence. In *Woodson*, the North Carolina Supreme Court specifically stated that "one who employs an independent contractor is not liable for the independent contractor's negligence unless the employer retains the right to control the manner in which the contractor performs his work." *Woodson*, 329 N.C. at 350, 407 S.E.2d at 234.

In the instant case, the record establishes that defendant Pizzagalli did not retain the right to control the method and manner in which defendant Acme and its employees performed their job. The subcontract agreement between defendant Pizzagalli and defendant Acme reveals that defendant Acme was hired as a subcontractor to perform plumbing work. Pursuant to the contract, defendant Acme was to provide all labor, materials, tools, and equipment necessary to perform the work. While defendant Pizzagalli maintained a supervisory role and defendant Acme was expected

HOOPER v. PIZZAGALLI CONSTRUCTION CO.

[112 N.C. App. 400 (1993)]

to comply with the plans and specifications of the overall project, defendant Acme was free to perform its job according to its own independent skill, knowledge, training, and experience.

In *Denny v. City of Burlington*, 155 N.C. 33, 70 S.E. 1085 (1911), the Court stated:

> The proprietor may make himself liable by retaining the right to direct and control the time and manner of executing the work or by interfering with the contractor and assuming control of the work, or of some part of it, so that the relation of master and servant arises, or so that an injury ensues which is traceable to his interference [.] . . . But merely taking steps to see that the contractor carries out his agreement, as, having the work supervised by an architect or superintendent, does not make the employer liable, nor does reserving the right to dismiss incompetent workmen.

*Id.* at 38, 70 S.E. at 1087. The record indicates that Pizzagalli had a general supervisory role, but did not interfere with Acme's work or any part of its work so as to retain control and thereby make itself liable. As such, this argument is meritless.

Plaintiffs also argue that the work being performed by the decedent in conjunction with the use of the scaffold was an inherently dangerous activity, and therefore, defendant Pizzagalli had a non-delegable duty to provide for the safety of others.

The law in North Carolina states that "[o]ne who employs an independent contractor to perform an inherently dangerous activity may not delegate to the independent contractor the duty to provide for the safety of others[.]" *Woodson*, 329 N.C. at 352, 407 S.E.2d at 235. An inherently dangerous activity is defined as work to be done from which mischievous consequences will arise unless preventative measures are adopted, *Greer v. Construction Co.*, 190 N.C. 632, 130 S.E. 739 (1925), and that which has "a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the contractor, which later might take place on a job itself involving no inherent danger." *Woodson*, 329 N.C. at 351, 407 S.E.2d at 234.

In the instant case, the record reveals that Acme was hired to perform plumbing work. At the time of the accident, the decedent was working on a valve located on the seventh floor interstitial

HOOPER v. PIZZAGALLI CONSTRUCTION CO.

[112 N.C. App. 400 (1993)]

area of the project. The record reveals that the decedent and his co-worker Rigsbee used a scaffold to better reach the valve. The decedent and Rigsbee stood on the scaffold thirteen feet off the ground and did not properly secure the scaffold board or take any other precautions. Use of a scaffold in conjunction with the plumbing work was not set out in the contract. As a result, use of the scaffold by the decedent and Rigsbee was totally collateral to the work as contracted. No recovery may be allowed for an injury resulting from an act or fault purely collateral to the work and which arises entirely from the wrongful act of the independent contractor or his employees. *Evans v. Elliott*, 220 N.C. 253, 259, 17 S.E.2d 125, 128 (1941); *Goolsby v. Kenney*, 545 S.W.2d 591, 594 (1976).

In addition, we find that the nature of plumbing work does not have any substantial and recognizable dangers inherent in the work. Although North Carolina has not directly addressed the issue of whether plumbing is an inherently dangerous activity, other jurisdictions have held that plumbing is not an inherently dangerous activity. *Goolsby*, 545 S.W.2d 591. Accordingly, we find the trial court was correct in granting defendant Pizzagalli's summary judgment motion on the issue of negligence in that (1) defendant Pizzagalli did not retain control of the manner and method in which defendant Acme performed its work, (2) the work performed was not an inherently dangerous activity, and (3) the death of the decedent resulted from the use of a scaffold which was totally collateral to the work as contracted relieving defendant Pizzagalli of liability.

[2] By plaintiffs' second assignment of error, plaintiffs contend that the trial court erred in granting defendant West Durham's summary judgment motion. We disagree.

Summary judgment is appropriate where there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *Neal v. Craig Brown, Inc.*, 86 N.C. App. 157, 158, 356 S.E.2d 912, 913, *disc. review denied*, 320 N.C. 794, 361 S.E.2d 80 (1987). This is determined by a consideration of the pleadings, depositions, answers to interrogatories, admissions on file, affidavits and any other materials presented to the court. *Buffington v. Buffington*, 69 N.C. App. 483, 488, 317 S.E.2d 97, 100 (1984).

Plaintiffs argue that defendant West Durham was negligent in that defendant breached a duty owed to decedent as an invitee

to use ordinary care. Plaintiffs cite *Cathey v. Construction Co.*, 218 N.C. 525, 11 S.E.2d 571 (1940) in support of their argument.

In *Cathey*, an employee of a subcontractor sustained an injury when he fell off a scaffold that had been constructed and was owned by the main contractor. The issue on appeal was whether the main contractor had a duty to exercise due care to plaintiff.

The facts of the case revealed a long course of dealing between the parties, and an agreement between the main contractor and the subcontractor that the necessary scaffold, to be used in the installation of the roof, would be furnished by the main contractor. The Court concluded that based on the aforementioned facts, the defendant owed a duty to the worker as an invitee and that the defendant had breached its duty when the defendant knowingly allowed the plaintiff to use a scaffold made of defective material and of insufficient strength, and removed a support without notice to the employees. The *Cathey* Court found sufficient facts to allow the case to be submitted to the jury on the issue of the defendant's negligence.

The facts in the instant case are distinguishable in that there was no evidence that permission had been given to the worker to use the scaffold. Moreover, defendant West Durham presented evidence that on the day of the accident defendant West Durham had two crews working on the project but neither crew was using the scaffold in the work area where the decedent fell. There was no evidence presented by plaintiff which showed who was responsible for placing the scaffold in the work area where the decedent fell.

Plaintiff has simply come forward with no evidence that West Durham placed the scaffold board in the work area in which decedent fell or knowingly allowed its use by the decedent. As such, we cannot find a duty owed or a duty breached. We find the trial court correctly granted a summary judgment motion as a matter of law on the issue of negligence.

[3] By plaintiffs' last assignment of error, plaintiffs contend the trial court erred when it denied plaintiffs' motion for appropriate relief and motion to amend, and when it granted defendant Acme's 12(b)(6) motion. We disagree.

An order granting or denying relief under North Carolina General Statutes § 1A-1, Rule 60(b) (1990) will not be disturbed on appeal unless it appears that there was a substantial miscar-

riage of justice or that the decision is manifestly unsupported by reason. *Huggins v. Hallmark Enterprises, Inc.*, 84 N.C. App. 15, 351 S.E.2d 779 (1987).

Plaintiffs do not appeal from the original order dismissing plaintiffs' claims against Acme. Instead, plaintiffs appeal from Judge Hudson's ruling on plaintiffs' motion which requested appropriate relief from an order entered by Judge Read which granted defendant Acme's motion to dismiss plaintiffs' complaint.

The Rule 60 motion was appropriately denied in that the order entered by Judge Read resolved less than all claims in the action. The judgment therefore was not a final judgment and remained interlocutory until the other pending claims were resolved. Rule 60(b) has no application to interlocutory judgments or proceedings of the trial court. It only applies, by its express terms, to final judgments. *Sink v. Easter*, 288 N.C. 183, 217 S.E.2d 532 (1975). We find that Judge Hudson was therefore correct in denying the plaintiff's motion for appropriate relief.

[4] In addition, we find the trial court properly denied plaintiffs' motion to amend. As a general rule, when an order is entered dismissing a claim, amendment of the complaint is not allowed unless the order is set aside or vacated under Rule 59 or Rule 60. *Johnson v. Bollinger*, 86 N.C. App. 1, 356 S.E.2d 378 (1987). Since the court did not allow plaintiffs' motion to set aside the order dismissing plaintiffs' complaint, it could not allow plaintiffs' motion to amend plaintiffs' complaint. *Chrisalis Properties, Inc. v. Separate Quarters, Inc.*, 101 N.C. App. 81, 398 S.E.2d 628 (1990), *disc. review denied*, 328 N.C. 570, 403 S.E.2d 509 (1991).

[5] Plaintiffs also argue that the trial court erred in granting defendant Acme's motion to dismiss the complaint on the grounds that the court had no subject matter jurisdiction over plaintiffs' claim pursuant to the Workers' Compensation Act. Plaintiffs argue that they filed a tort action which alleged that defendant Acme engaged in misconduct which was substantially certain to cause death or injury and pursuant to the holding in *Woodson*, the trial court did have subject matter jurisdiction.

The Court in *Woodson* stated:

[W]hen an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that

## HOOPER v. PIZZAGALLI CONSTRUCTION CO.

[112 N.C. App. 400 (1993)]

misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the [Workers' Compensation] Act.

*Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228. Because the employer furnishes benefits under the Act, employer liability must be based on more egregious conduct than the "wilful and wanton misconduct" standard applicable to injuries inflicted by co-employees. *Id.*

The forecast of evidence by plaintiffs did not produce evidence tending to show that the employer defendant Acme engaged in conduct substantially certain to cause death or injury. As stated earlier, defendant Acme was hired to provide plumbing services for the project. There was no evidence that the supervisor for defendant Acme directed the decedent and Mr. Rigsbee to engage in any activity substantially certain to cause death or injury. In fact, there was no evidence presented which established that the supervisor directed decedent and Mr. Rigsbee to use the makeshift scaffold or expected that the installation of a valve gasket would be performed with the assistance of the makeshift scaffold. As such, there is no genuine issue of fact as to whether any agent of Acme engaged in misconduct which was known to create a substantial certainty of death or injury. Because *Woodson* is inapplicable, the action falls under the exclusivity provisions of the Workers' Compensation Act and the trial court is without subject matter jurisdiction. The trial court properly granted defendant Acme's motion to dismiss.

The decision of the trial court is affirmed.

Judges GREENE and WYNN concur.