AL PATRICK O'CARROLL, ADMINISTRATOR OF THE ESTATE OF WILLIAM C. O'CARROLL, Plaintiff v. ROBERTS INDUSTRIAL CONTRACTORS, INC.; ROBERTS WELDING CONTRACTORS, INC.; JOHN B. ROBERTS, Individually; THE ROBERTS COMPANY; and TEXASGULF, INC., Defendants

No. 9410SC659

(Filed 6 June 1995)

1. **Labor and Employment § 182 (NCI4th)— trenching work by independent contractor—no supervision by owner— insufficiency of evidence of negligence**

   Defendant owner was not liable to an employee of a contractor for the negligence of the contractor in conducting trenching operations where the owner did not supervise, participate in, or "police" the work done by the contractor.

   **Am Jur 2d, Independent Contractors § 37.**

2. **Labor and Employment § 192 (NCI4th)— trenching work by independent contractor—inherently dangerous trench— knowledge of owner—sufficiency of evidence**

   In a wrongful death action where plaintiff contended that a trench was inherently dangerous, that defendant owner had knowledge of the circumstances creating the danger, and that defendant owner had a non-delegable duty to provide employees of an independent contractor with a safe place to work, evidence was sufficient to survive summary judgment where it tended to show that the owner's employees knew that the trench had not been properly sloped, and one of the owner's employees, after observing that the soil was not stable and some had sloughed off into the trench, told the independent contractor's employees to slope before allowing anyone into the trench.

O'CARROLL v. ROBERTS INDUSTRIAL CONTRACTORS

[119 N.C. App. 140 (1995)]

**Am Jur 2d, Independent Contractors §§ 37-39.**

**Liability of employer with regard to inherently danger-
ous work for injuries to employees of independent con-
tractor. 34 ALR4th 914.**

Appeal by plaintiff from order entered 18 April 1994 by Judge
Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the
Court of Appeals 23 February 1995.

*Blanchard, Twiggs, Abrams & Strickland, P.A., by Douglas B.
Abrams and Dill, Fountain, Hoyle & Pridgen, by William S.
Hoyle and Randall B. Pridgen, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.,
by Samuel G. Thompson, for defendant Texasgulf, Inc.*

JOHNSON, Judge.

This appeal is from an order granting defendants' summary judg-
ment motion. The facts are as follows: William C. O'Carroll was
employed in January of 1991 by Roberts Welding (Roberts' corporate
entities, hereinafter Roberts defendants) as a welder. He was later
killed in an accident on the job. At that time, defendant Texasgulf had
a contract with Roberts defendants for certain excavation and weld-
ing work at defendant Texasgulf's phosphate mine in Aurora, North
Carolina. Roberts defendants held itself out to defendant Texasgulf as
having expertise in excavation work when it bid on this particular
contract. Roberts defendants had performed independent contract
work for defendant Texasgulf prior to this contract and, as part of its
construction business, Roberts defendants maintained its own earth-
moving equipment. For the purposes of this contract, Mr. Bruce
Coward was Roberts defendants' foreman for all excavation work.
During the performance of the contract, Roberts defendants were in
direct supervision and control of the excavation site.

On 14 January 1991, Roberts defendants began performance of its
contract with defendant Texasgulf. The contract called for the
removal and replacement of a thirty-inch pipe under a road at the
Texasgulf facility. The contract required Roberts defendants to com-
plete the project in two stages, so as not to interrupt traffic on the
road. Defendant Texasgulf did not participate in, supervise, or
"police" the welding and excavation work performed by Roberts
defendants under the contract.

On the first day of the project, Mr. Bruce Coward used a backhoe to begin digging a trench to uncover the thirty-inch pipe on one side of the road. Subsequent to the excavations beginning on the first trench, defendant Texasgulf's Safety Specialist, Mr. Dwight Williams, arrived at the site. Mr. Williams reminded Roberts defendants that, during the excavations and before anyone went into the trench, Roberts defendants should slope the walls of the trench for safety purposes. Roberts defendants, in fact, did slope the walls of this first trench. The sloping on the first trench was adequate, and Roberts defendants completed the first half of the project without incident.

On 17 January 1991, Mr. Coward began excavations on the second trench on the other side of the road. Late that afternoon, Mr. Coward discovered additional pipes in the excavation area. Mr. Coward then stopped excavations for the day and backfilled the trench to a level of about four feet, which was just deep enough to leave the newly discovered pipes exposed. The following morning he contacted defendant Texasgulf to determine whether Roberts defendants could remove the newly discovered pipes. Employees of defendant Texasgulf reminded Roberts defendants to be sure to slope the walls of the trench as they continued their excavations.

When the employees of defendant Texasgulf saw the second trench on the morning of the day of the accident, it was only three to five feet deep. At this time, defendant Texasgulf's employees, Mr. Jackson and Mr. Fulmer, did not see any evidence that anyone actually had worked in the trench. However, Mr. Fulmer stated that as to the safety of the trench at the time he observed it on the morning of the accident, he would have put more slope on the trench before allowing anyone to work in it. He recommended that more slope be placed on the wall after observing that part of the earth had "sloughed off into the trench." He made this recommendation because this indicated to him "that the material [soil] was unconsolidated, that there was a potential for more material to fall if it wasn't sloped. . . ."

Mr. Stephen Carrow, defendant Texasgulf's Area Supervisor, had visited the excavation site earlier that morning at about 8:00 a.m., to make sure that Roberts defendants' work was on schedule. Mr. Carrow did not see anything unsafe or dangerous about the second trench.

Once defendant Texasgulf confirmed that Roberts defendants could remove the newly discovered pipes, defendant Texasgulf's employees left the excavation site and did not return until after the

accident. Neither Roberts defendants, nor its employees, sloped the walls of the second trench prior to continuing their excavation. Mr. Coward then continued digging with the backhoe. When Mr. Coward finished digging, plaintiff's decedent, Mr. O'Carroll, entered the trench to begin welding. Only minutes after entering the trench, plaintiff's decedent was fatally injured when the north wall of the trench collapsed.

The federal Mine Safety & Health Administration investigated the accident. Following the investigation, a citation was issued against Roberts defendants on 24 January 1991, for violating the regulations promulgated pursuant to the Mine Safety and Health Act. This was the first citation Roberts defendants had received from any governmental agency for any excavation activity. No citation was issued against defendant Texasgulf for the accident.

On 16 December 1992, plaintiff filed this wrongful death action on behalf of the heirs of Mr. O'Carroll. Plaintiff sued Roberts defendants, John B. Roberts, individually, and defendant Texasgulf. Plaintiff settled all claims with Roberts defendants and John B. Roberts. Plaintiff's complaint asserted five claims against defendant Texasgulf: negligence, wanton misconduct, strict liability, absolute liability and punitive damages.

On 2 February 1994, defendant Texasgulf filed a motion for summary judgment. On 11 February 1994, defendant Texasgulf filed an amended motion for summary judgment. Defendant Texasgulf's amended motion specifically incorporated the affidavits of John B. Roberts and Bruce Coward, which Roberts defendants and John B. Roberts had attached to their motions for summary judgment before settling with plaintiff. On 6 April 1994, Judge Henry V. Barnette, Jr. issued a memorandum of decision explaining the grounds for the court's decision to grant summary judgment in favor of defendant Texasgulf on all claims. On 18 April 1994, the court issued an order and judgment dismissing all claims against defendant Texasgulf.

Plaintiff, in the instant case, has failed to argue in its brief issues regarding the trial court's dismissal of its wanton misconduct, strict liability, absolute liability, and punitive damages claims; thus, they are deemed abandoned. N.C.R. App. P. 28. Plaintiff only argues its negligence claim that defendant Texasgulf is liable for the negligence of Roberts defendants under the non-delegable duty doctrine.

Where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment shall be granted. N.C.R. Civ. P. 56. A consideration of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, determine if summary judgment is appropriate. *Taylor v. Ashburn*, 112 N.C. App. 604, 436 S.E.2d 276 (1993), *cert denied*, 336 N.C. 77, 445 S.E.2d 46 (1994). Summary judgment is a forecast of the evidence used to determine if a jury trial is needed. *Howard v. Parker*, 95 N.C. App. 361, 382 S.E.2d 808 (1989). The forecast of evidence in the instant case shows that Roberts defendants were independent contractors. An independent contractor "exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work." *Cook v. Morrison*, 105 N.C. App. 509, 513, 413 S.E.2d 922, 924 (1992) (*quoting Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 384, 364 S.E.2d 433, 437 (1988)).

Our Courts recognize that a party who contracts with another to do work is not liable for injuries sustained by the contractor's employees unless the employer has retained the right to control the method and manner in which the independent contractor performs his employment. *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). *See also Hooper v. Pizzagalli Construction Co.*, 112 N.C. App. 400, 436 S.E.2d 145 (1993), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 516 (1994). Our Court in *Hooper* states in pertinent part:

North Carolina law provides that a general contractor does not have a duty to furnish a subcontractor or the subcontractor's employees with a safe place in which to work. Instead, it is the duty of the subcontractor to provide himself and his employees with a safe place to work and, also, to provide proper safeguards against the dangers of the work. (Citations omitted.)

*Id.* at 403-04, 436 S.E.2d at 148. Exceptions to the no-liability rule include: (1) situations where the contractor retains control over the manner and method of the subcontractor's substantive work, (2) situations where the work is deemed to be inherently dangerous, and (3) situations involving negligent hiring and/or retention of the subcontractor by the general contractor. *Woodson*, 329 N.C. 330, 407 S.E.2d 222.

In the instant case, plaintiff's forecast of evidence must show that its claims fit within one of the above mentioned exceptions. Plaintiff

argues that this action falls within the first two exceptions—that defendant Texasgulf maintained control over the manner and method of Roberts defendants' work and that defendant Texasgulf had a non-delegable duty to ensure the safety of decedent because trenching is an inherently dangerous activity.

[1] Our Supreme Court in *Woodson* said that "one who employs an independent contractor is not liable for the independent contractor's negligence unless the employer retains the right to control the manner in which the contractor performs his work." *Woodson*, 329 N.C. at 350, 407 S.E.2d at 234. The first exception is based on the supposition that defendant Texasgulf, the contractor, retained the right to control the manner and method of Roberts defendants' work. The record indicates that employees of both Roberts defendants and defendant Texasgulf testified that defendant Texasgulf did not supervise, participate in, or "police" the work done by Roberts defendants under the contract. According to the record, on the day of the accident, defendant Texasgulf's employees were called to the site by Roberts defendants to identify pipes; they inspected the pipes and affirmed that the pipes were no longer used and that removal was not a problem. Defendant Texasgulf did not retain control of the manner and method of Roberts defendants' work. Plaintiff, in the instant case, argues that defendant Texasgulf failed to supervise, and that defendant Texasgulf "had the authority to stop the trenching operation at any time." However, this Court has stated that "merely taking steps to see that the contractor carries out his agreement, . . . does not make the employer liable, nor does reserving the right to dismiss incompetent workmen." *Hooper*, 112 N.C. App. at 405, 436 S.E.2d at 149 (*quoting Denny v. Burlington*, 155 N.C. 33, 39, 70 S.E. 1085, 1087 (1911)).

Plaintiff argues that defendant Texasgulf was vicariously liable for the negligence of Roberts defendants under the non-delegable duty doctrine. Our Supreme Court in *Woodson* noted that vicarious liability does not arise against a landowner or a general contractor based on the non-delegable duty doctrine. *Woodson*, 329 N.C. 330, 407 S.E.2d 222. Plaintiff's reliance on pre-*Woodson* cases for the proposition that a breach of a non-delegable duty gives rise to vicarious liability is misplaced in light of the Supreme Court's decision in *Woodson*.

[2] Plaintiff next argues that the subject trench was inherently dangerous and that defendant Texasgulf had knowledge of the circumstances creating the danger. Plaintiff argues that the work being per-

formed was an inherently dangerous activity; therefore, defendant Texasgulf had a non-delegable duty to provide employees of an independent contractor with a safe place to work. In *Woodson*, the Supreme Court stated that "[o]ne who employs an independent contractor to perform an inherently dangerous activity may not delegate to the independent contractor the duty to provide for the safety of others[.]" *Woodson*, 329 N.C. at 352, 407 S.E.2d at 235. Our Court defines an inherently dangerous activity

> as work to be done from which mischievous consequences will arise unless preventative measures are adopted, and that which has "a recognizable and substantial danger inherent in the work, as distinguished from a danger collaterally created by the independent negligence of the contractor, which later might take place on a job itself involving no inherent danger." (Citations omitted.)

*Hooper*, 112 N.C. App. 400, 405, 436 S.E.2d 145, 149. Additionally, the Supreme Court noted that a non-delegable duty would arise only when the trenching done by an independent contractor becomes inherently dangerous and the owner knows of "the dangerous propensities of the particular trenching in question." *Woodson*, 329 N.C. at 358, 407 S.E.2d at 238. *See also Dunleavy v. Yates Construction Co.*, 114 N.C. App. 196, 442 S.E.2d 53 (1994). The dangers involved in trenching are addressed on a case by case basis. *Woodson*, 329 N.C. 330, 407 S.E.2d 222.

In the case *sub judice*, the evidence presented is enough to survive summary judgment. Whether the trench in question was inherently dangerous at the time defendant Texasgulf's employees last saw the trench is a question of fact for the jury. *Id.*

Defendants rely upon this Court's decision in *Dunleavy* to argue that defendant Texasgulf did not know of the dangerous condition of the trench. However, the instant action is distinguishable from *Dunleavy*. In *Dunleavy*, there was no indication at the time that employees had any knowledge that the trench was inherently dangerous while looking at it. In fact, employees reported that the soil was "firm and stable," unlike the soil in the instant case which was said to be unsettled. *Dunleavy*, 114 N.C. App. at 198, 442 S.E.2d at 54.

In the instant case, depositions of defendant Texasgulf's employees reveal that defendant Texasgulf may have had knowledge of the inherent dangers of the trench involved which would give rise to a

non-delegable duty to the decedent. The evidence presented to the trial court, thus, establishes a genuine issue of material fact regarding whether defendant Texasgulf had notice of a dangerous condition in the trench.

Plaintiff's forecast of evidence shows defendant Texasgulf's employees knew that the trench had not been properly sloped, and that one of defendant Texasgulf's employees, after observing that the soil was not stable and some had sloughed off into the trench, told Roberts defendants' employees to slope before allowing anyone into the trench. This is evidence from which a jury could reasonably conclude that defendant Texasgulf's employees knew that the trench was inherently dangerous at that time.

Therefore, the trial court improperly concluded that summary judgment for defendant Texasgulf was warranted and the decision is reversed.

Reversed.

Judges JOHN and MARTIN, MARK D. concur.