**Jose BARRIENTOS, et al., Plaintiffs,**

**v.**

**Jake TAYLOR, Jr., et al., Defendants.**

**No. 5:94–CV–253–BR3.**

United States District Court,
E.D. North Carolina,
Western Division.

Feb. 1, 1996.

on property owned by Taylor Farms or Jake Taylor, Jr. Plaintiffs performed such labor pursuant to a contract between Taylor Farms and defendant Hernandez, a farm labor contractor.

Plaintiff Jose Barrientos was injured on 28 July 1992 while riding in a tobacco wagon allegedly driven by Ramon Sanchez. According to plaintiff, a piece of unsecured heavy metal equipment fell on plaintiff's foot and ankle when the wagon rapidly accelerated. Defendants admit that the wagon did not have secure or safe seats; however, they contend that plaintiff was not authorized to ride as a passenger in the wagon.

The complaint alleges violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801–1872, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219,[1] and North Carolina's common law of negligence.[2] Plaintiffs seek declaratory, monetary, and injunctive relief.

The Taylors and Taylor Farms have moved for summary judgment as to all the claims, and Hernandez has moved for summary judgment only as to the issue of punitive damages.

Robert J. Willis, Raleigh, NC, for plaintiffs.

Henry C. Babb, Jr., Wilson, NC, Ivan Joe Ivey, Wilson, NC, for defendants.

## ORDER

BRITT, District Judge.

Before the court are the motion for summary judgment of defendants Jake Taylor, Jr.; Mrs. Jake Taylor, Jr. (Linda); and Jake Taylor Farms, Inc.; and the motion for partial summary judgment of defendant Angel Hernandez. Plaintiffs responded, and thus this matter is now ripe for disposition.

### I. *FACTS*

Defendants Jake Taylor, Jr. and Mrs. Jake Taylor, Jr. ("the Taylors") are the president and secretary/treasurer, respectively, of defendant Jake Taylor Farms, Inc. ("Taylor Farms") which operates a sweet potato and tobacco growing business in Halifax County, North Carolina. During the 1992 harvest season, plaintiffs, who are migrant agricultural workers, performed agricultural labor

### II. *DISCUSSION*

Summary judgment is appropriate if the court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Fourth Circuit has articulated the summary judgment standard as follows:

> A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513. The plaintiff is entitled to have the credibility of all his [or her] evidence pre-

---

1. All plaintiffs except Jose Barrientos allege violations of the FLSA.

2. Only plaintiff Jose Barrientos alleges negligence on the part of defendants.

sumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he [or she] may not rest on mere allegations or denials, *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Patterson v. McLean Credit Union,* 39 F.3d 515, 518 (4th Cir.1994) (quoting *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994)).

### A. AWPA and FLSA "Employer–Related" Claims

Plaintiffs seek damages against the Taylors and Taylor Farms for alleged violations of the AWPA, 29 U.S.C. §§ 1821(a), 1821(d)(1)–(2), 1822(a),[3] and 1841(b)(1) and the FLSA, 29 U.S.C. § 211(c).[4] The language of each of these statutory sections requires that defendants have an employment relationship with plaintiffs. *See Ricketts v. Vann,* 32 F.3d 71, 75 (4th Cir.1994) (holding employment relationship is necessary for claims under §§ 1821(a), 1821(d)(1)–(2), and 1841(b)(1)(A)); 29 U.S.C. § 1822(a) (applies to "each ... agricultural *employer* ... which *employs* any migrant agricultural worker" (emphases added)); 29 U.S.C. § 211(c) (applies to "every *employer* subject to any provision of this chapter" (emphasis added)).

 The terms "employ", "employee", and "employer" as they are used in the AWPA are given the same meaning as those terms are defined in the FLSA. 29 U.S.C. § 802(5); 29 C.F.R. § 500.20(h). As defined by the FLSA, " 'employ' includes to suffer or permit to work." 29 U.S.C. § 203(g). "Employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). An "employee" is one who is employed by an employer. *Id.* § 203(e)(1). "Courts have adopted an expansive interpretation of the [aforementioned] definitions under the FLSA, in order to effectuate the broad remedial purposes of the Act." *Haywood v. Barnes,* 109 F.R.D. 568, 586 (E.D.N.C.1986).

As explained by the court in *Haywood:*

[I]t is well-established that the issue of whether an employer/employee relationship exists under the FLSA, and hence the AWPA, must be judged by the "economic realities" of each individual case. A person is responsible as an "employer" of another where the work "follows the usual path of the employee," and where, as a matter of economic reality, the employee is dependent upon that person for their livelihood. The touchstone of economic reality in analyzing the possible employment relationship is clearly economic "dependency."

*Id.* (citations omitted).

Plaintiffs may establish that an employer/employee relationship existed by showing that the Taylors and/or Taylor Farms were "agricultural employers" under the AWPA or joint employers with Hernandez. *See Ricketts,* 32 F.3d at 75. As plaintiffs argue principally for a finding of joint employment, the court will address this issue first.

The term "employ" encompasses situations of joint employment. 29 C.F.R. § 500.20(h)(4). "Joint employment" is defined as

a condition in which a single individual stands in the relation of an employee to two or more persons at the same time. A determination of whether the employment is to be considered joint employment depends upon all the facts in the particular case. If the facts establish that two or more persons are completely disassociated with respect to the employment of a particular employee, a *joint employment* situation does not exist.

*Id.* § 500.20(h)(4)(i).

 Factors which courts may use as guidance in determining whether a joint em-

---

3. Plaintiff Jose Barrientos does not bring this claim.

4. See *supra* note 1.

ployment situation exists include the following:

(1) the nature and degree of control of the workers;

(2) the degree of supervision, direct or indirect, of the work;

(3) the power to determine the pay rates or the methods of payment of the workers;

(4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and,

(5) preparation of payroll and the payment of wages.

*Id.* § 500.20(h)(4)(ii). The *Haywood* court considered, in addition to the aforementioned factors, other factors as relevant in the analysis of joint employment: (1) ownership of the property and facilities where the work occurred; (2) degree of skill required to perform the job; (3) investment in equipment and facilities; and (4) permanency and exclusivity of employment. *See* 109 F.R.D. at 587. No one factor is dispositive; rather, the court must look to "the circumstances of the whole activity." *Id.; Howard v. Malcolm,* 852 F.2d 101, 105 (4th Cir.1988). The Fourth Circuit has expressly adopted the *Haywood* analysis. *See Ricketts,* 32 F.3d at 76. The court will now consider the nine *Haywood* factors in turn.

1. *Nature and Degree of Control*

■ With respect to this factor, the *Haywood* court noted that it is "the *right* to control, not necessarily the actual exercise of that control" which is important. 109 F.R.D. at 589. In its examination, the court cited numerous facts which demonstrated the defendants' right to control the migrant workers and the actual exercise of such control. *See id.* at 589–90 (e.g., the defendants determined the fields in which the plaintiffs worked, when the plaintiffs were to start and stop working, and when a field was ready for harvest; the defendants supervised the plaintiffs throughout the workday). The court summarized its analysis by stating:

Most decisions involving judgment, initiative, or basic control were made by the defendants. All meaningful aspects of the business relationship were dominated by defendants: price, crop cultivation, fertili-

zation and harvesting, method and amount of payment, and work assignments.

*Id.* at 590.

■ Here, defendant Jake Taylor, Jr. controlled almost all aspects of the farming operation with little or no input from Hernandez. Taylor made the major decisions with respect to the planting, fertilization, and cultivation of crops. (*See, e.g.,* J. Taylor Dep. at 134–35; L. Taylor Dep. at 139; Brinson Dep. of 3/24/95 at 47–48, 55–56, 62, 81, 84–85.) For example, Taylor determined when the tobacco and sweet potatoes were ready for harvest, (J. Taylor Dep. at 133–34, 146), decided where the crews would work, (*id.* at 137, 142; Sanchez Dep. at 43–44; A. Barrientos Dep. at 29), and dictated the time at which plaintiffs were to start and stop working, (Hernandez Dep. at 85–86). Taylor also showed Hernandez which leaves to break off the tobacco plants so that Hernandez would convey the same to his crew. (*See id.* at 75–77.) In addition, Taylor inspected the sweet potatoes and reprimanded Hernandez when the sweet potatoes were not harvested properly, with the expectation that Hernandez would then tell the workers to correct the problem(s). (*See id.* at 201–05; L. Taylor Dep. 116–17; Sanchez Dep. at 44, 50–51, 56; Hernandez Dep. at 158; A. Barrientos Dep. at 30.) Hernandez's lack of initiative is particularly evidenced by the fact that Hernandez and his crew did only that amount of work required by Taylor, even though Hernandez might want the crew to do more. (*See id.* at 86.)

Citing *Charles v. Burton,* 857 F.Supp. 1574 (M.D.Ga.1994), defendants contend "control" must be evidenced by more than the "general instructions" given by defendants with regards to the quantity to be harvested and which fields to harvest. The court in *Charles* did state that " '[c]ontrol,' however, must mean something more than simply a restatement of the farmer's role in agriculture" and adopted a definition of "control" which emphasized the defendant's "right to dictate the manner in which the details of the harvesting function are executed." *Id.* at 1579–80. Even if this court were to adopt this definition of control, which the court expressly does not adopt or reject at this time, evi-

dence exists that defendants dictated the execution of harvesting functions. As previously recognized, Taylor explained to Hernandez how the workers were to break off leaves from the tobacco plants and controlled the workers' harvesting of the sweet potatoes. *Carter* explicitly noted that although the farm operator defendants did direct the fields to be picked, they maintained no control over the manner in which the crops on those fields would be picked. The situation here is to the contrary. In sum, defendants not only retained control over plaintiffs, but also they exercised that control to a significant degree.

### 2. *Degree of Supervision*

■ Evidence does exist that the Taylors engaged in supervision of Hernandez's crew. The Taylors would inspect the harvested sweet potatoes and when they were not satisfied with the crew's work, they would inform Hernandez, knowing that Hernandez would in turn speak directly to the crew about correcting the problems. (*See* J. Taylor Dep. at 201–05; L. Taylor Dep. at 66–67.) Plaintiff Jose Barrientos testified that he received instructions, albeit indirectly, from Jake Taylor, Jr., and he recalled Linda Taylor directing him where to park the truck which he has driving to unload sweet potatoes. (J. Barrientos Dep. at 37–39, 57.) Other workers recall Linda Taylor instructing them through hand signals as to the proper method for cutting the tobacco plants. (*See* Sanchez Dep. at 80; I. Barrientos Dep. at 85–86.) While Jake Taylor, Jr. does not dispute giving instructions and inspecting the work, Linda Taylor denied that she ever instructed workers in the field, other than indicating that the workers should stop pulling tobacco leaves, (L. Taylor Dep. at 71–73). However, this factual dispute is not material.

Based on a review of the record, it appears that Hernandez's direct supervision of his crew was dependent primarily upon the instructions he received from Jake Taylor, Jr. Although the Taylors did not engage in constant, on-site supervision, the direct and the indirect supervision exercised over plaintiffs and the other members of Hernandez's crew

sufficiently favors a finding of joint employment.

### 3. *Power to Determine Pay Rates and Methods of Payment*

■ Plaintiffs concede that Hernandez, not the Taylors nor Taylor Farms, determined the methods of payment to plaintiffs. (Pls.' Mem.Opp'n Summ.J. at 29.) In 1992 with respect to tobacco, Taylor Farms paid Hernandez $5.25 per hour for each hour that Hernandez's crew worked. (J. Taylor Dep. at 79, 232–35; Hernandez Dep. at 73.) Hernandez in turn paid the workers $4.25 per hour, and Taylor Farms paid Hernandez the additional $1.00 per hour to "cover" Social Security taxes on the workers' wages. (Hernandez Dep. at 69–73, 84–85; *see also* L. Taylor Dep. at 45.) When the minimum wage rate increased, Taylor Farms similarly increased the hourly rate paid for tobacco, yet they did not increase the $1.00 per hour paid to Hernandez. (*See id.* at 81–82.) The employees that the Taylors and Taylor Farms paid directly received the same rate of $4.25 per hour that plaintiffs, as members of Hernandez's crew, received. (Brinson Dep. of 3/24/95 at 43; L. Taylor Dep. at 47, 64–65, 198.)

Unlike for tobacco, the pay rates for sweet potatoes were determined according to a piece rate. Taylor Farms paid Hernandez $.85 per bushel and a "bonus" of $.10 per bushel. (J. Taylor Dep. at 84.) The bonus was to compensate Hernandez for his expenses. (*See id.*) Hernandez also paid the workers a piece rate, however the rate was $.32 per bucket. (Hernandez Dep. at 160.) According to Hernandez, if the piece rate did not equal or exceed what the worker should have made based on the minimum wage rate, then the worker would be paid by the minimum wage hourly rate, the difference being absorbed by Hernandez. (*Id.* at 162–63.) Hernandez testified that without the influx of cash from the Taylors, he would be unable to compensate the crew. (*Id.* at 78.)

Based on the foregoing, the Taylors and Taylor Farms possessed the power to determine plaintiffs' pay rates. Hernandez and Jake Taylor, Jr. used the same hourly rates for tobacco, which would increase as the min-

imum wage did. Further, they compensated plaintiffs for harvesting sweet potatoes based on the actual amount picked. Hernandez's dependence on the cash from the Taylors allowed him no discretion is setting the pay rates for plaintiffs. Essentially, the Taylors and Taylor Farms dictated what plaintiffs would receive.

#### 4. Right to Hire, Fire, or Modify Employment Conditions

The Taylors never hired or fired any particular worker. (J. Taylor Dep. at 252; L. Taylor Dep. at 208.) Although Hernandez stated that Jake Taylor, Jr. had a right to fire him, he said nothing about Taylor's ability to do so with respect to Hernandez's crew. (*See* Hernandez Dep. at 157–58.) The Taylors did, however, control plaintiffs' employment conditions. They owned and maintained the labor camp where plaintiffs lived. (L. Taylor Dep. at 50.) As recognized above, they controlled where, when, and how long plaintiffs worked. If they were not happy with how the work was being performed, they would notify Hernandez, who then made the workers alter what they were doing. Taylor even exercised the right to reject a worker for a particular task. (*See* J. Taylor Dep. at 75–78.)

#### 5. Preparation of Payroll and Payment of Wages

Hernandez was responsible for submitting payroll information to a payroll service and paying FICA/FUTA taxes. (Hernandez Dep. at 16, 84–85.) Defendants the Taylors and Taylor Farms did not prepare the payroll or make payments of wages to plaintiffs. (J. Taylor Aff. ¶ 12; J. Taylor Dep. at 253–54, 256–57.) Plaintiffs acknowledge that these facts support a finding that defendants were not joint employers of plaintiffs.

#### 6. Ownership of Property and Facilities

Defendants admit that Taylor Farms and/or Jake Taylor, Jr. lease(s) or solely own(s) the property on which the tobacco and sweet potato crops were grown. (Defs.' Mem.Supp.Summ.J. at 7.) They also acknowledge that plaintiffs resided in a labor camp owned by Taylor Farms and/or Jake Taylor, Jr. (*Id.*)

#### 7. Degree of Skill

Although defendants argue to the contrary, harvesting tobacco and sweet potatoes does not necessitate any special skill or training. Plaintiffs cut flowers and leaves from tobacco plants, unloaded tobacco from wagons and placed it on racks, removed tobacco from barns, cut sweet potato plants and placed them in boxes, picked sweet potatoes, filled buckets with sweet potatoes, and loaded sweet potatoes on trucks. (I. Barrientos Dep. at 18, 20, 38–42, 70, 82, 85; Hernandez Dep. at 64; J. Barrientos Dep. at 66; Rosas Dep. at 21, 24, 33, 63, 64, 65, 66, 68, 74; A. Barrientos Dep. at 13, 23, 30, 35.) Performing such tasks are routine and part of the regular operation of defendants' business. *See Haywood,* 109 F.R.D. at 588 (pulling vines and weeds, picking cucumbers and cantaloupes, setting plants); *Castillo v. Givens,* 704 F.2d 181, 190–191 (5th Cir.) (chopping cotton), *cert. denied,* 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983). Plaintiffs clearly performed unskilled labor.

#### 8. Investment in Equipment and Facilities

As admitted by the Taylors and Taylor Farms, they "have a *substantial* investment in mechanical equipment, including tractors, trucks and transplanter machinery used to plant, cultivate and harvest the crops." (Defs.' Mem.Supp.Summ.J. at 9 (emphasis added).) Defendants' expenditures on this equipment, the rental of land and allotments, bulk barns, a storage building, and plants were significant. (*See* J. Taylor Dep. at 46–53.) As far as equipment, Hernandez owned only several buses and four flatbed trucks. (Hernandez Dep. at 53–55, 79.) Defendants' total investment in equipment, land, housing, and storage facilities by far outweighs Hernandez's negligible outlays. *See Haywood,* 109 F.R.D. at 588–89.

#### 9. Permanency and Exclusivity of Employment

As recognized by the *Haywood* court with respect to this factor:

The fact that the plaintiffs and the farm labor contractors worked only for the [farm owners] on a seasonal basis does not vitiate the essential permanency of the relationship with the defendants.... "Harvesting of crops is a seasonal industry, without much permanence beyond the harvesting season. However, [sic] temporary the relationship may be it is nevertheless true that the relationship is permanent to the extent that the migrants worked only for defendants during the season."

*Id.* at 589 (citation omitted).

In the case at bar, plaintiffs, as did all members of Hernandez' crew, worked exclusively on defendants' land during the 1992 season. (Hernandez Dep. at ·25.) Because plaintiffs so worked, this factor favors a finding of joint employment. *Cf. Ricketts*, 32 F.3d at 76 & n. 6 (holding that joint employment situation did not exist where workers performed work on land owned by others and worked for other contractors).

Based upon the above analysis of the circumstances in this case, the court finds that the Taylors and Taylor Farms were joint employers of plaintiffs. These defendants clearly dominated plaintiffs' employment relationship. They controlled where and when plaintiffs worked, the manner in which plaintiffs worked, where and under what conditions plaintiffs lived, and how much plaintiffs made. Although Hernandez engaged in the direct supervision of plaintiffs, how he did so was largely determined by defendants. Further, he invested little of his own funds in the operation and had little opportunity for profit. He depended on defendants for significant guidance as well as monetary support. In sum, defendants were not completely disassociated with respect to plaintiffs' employment. Because the court so finds, the court does not address whether these defendants were "agricultural employers" under the AWPA.

Accordingly, defendants the Taylors and Taylor Farms' motion for summary judgment as to the claims under 29 U.S.C. §§ 211(c), 1821(a), 1821(d)(1)–(2), 1822(a), and 1841(b)(1) is DENIED.

### B. *Other Claims*

#### 1. *29 U.S.C. § 1823(b)(1)*

Section 1823(b)(1) of the AWPA provides in pertinent part:

[N]o facility or real property may be occupied by any migrant agricultural worker unless either a State or local health authority or other appropriate agency has certified that the facility or property meets applicable safety and health standards. No person who owns or controls such facility or property shall permit it to be occupied by any migrant agricultural worker unless a copy of the certification of occupancy is posted at the site.

Plaintiffs specifically allege that defendants did not post the certification required "to operate a septic tank system for the migrant housing used to house the plaintiffs" prior to plaintiffs' occupying the housing. (Compl. at ¶ 27(b).)

■ By its plain language, Section 1823(b)(1) applies to any person who owns or controls a housing facility or real property occupied by a migrant worker. Whether or not such person is an "agricultural employer" is not determinative. *Howard v. Malcolm*, 629 F.Supp. 952, 954 (E.D.N.C.1986). An owner is any person having "a legal or equitable interest in" the housing facility or real property. 29 C.F.R. § 500.130(b). One who is in control of such facility or property is any person who "is in charge of or has the power or authority to oversee, manage, superintend or administer the housing facility or real property either personally or through an authorized agent...." *Id.* § 500.130(c). While arguably each defendant falls within one of these two categories of persons liable, the court need not reach this issue as defendants Taylor Farms and the Taylors have failed to meet their summary judgment burden.

■ As recognized previously, it is the moving party who bears the burden of showing the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law. Although defendants submitted the sworn deposition testimony of Linda Taylor and copies of the "Preoccupancy Evaluation Report of Drinking Water Supply and

Sanitary Sewage Facilities for Migrant Housing" for the camps at issue, this evidentiary material is not of probative value. The testimony to which defendants cite as supporting the contention that defendants did post the certification only establishes that Linda Taylor ensured that the camps were inspected; Ms. Taylor did not testify that she posted the certificates after the inspections were performed. (*See* L. Taylor Dep. at 37–38.) Further, defendants' submission of copies of the occupancy certificate at issue does not lead to the conclusion that the certificate was, in fact, posted. The court cannot grant summary judgment on the basis of defendants' bare allegations.[5] Because defendants have failed to meet their summary judgment burden, defendants Taylors and Taylor Farms' motion for summary judgment as to the § 1823(b)(1) claim is DENIED.

### 2. *29 U.S.C. § 1842*

■ Plaintiff Jose Barrientos seeks damages against the Taylors and Taylor Farms for allegedly violating of 29 U.S.C. § 1842. Under § 1842, "[n]o person shall utilize the services of any farm labor contractor to supply any migrant ... agricultural worker unless the person first takes reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and authorizes the activity for which the contractor is utilized." Like § 1832(b)(1), the plain language of § 1842 does not restrict its application to the employer-employee relationship. *See Ricketts*, 32 F.3d at 76–77 (although the court found that the defendants were not employers within the meaning of §§ 1802(2) and (5), the court went on to analyze such defendants' liability under § 1842); *Howard*, 852 F.2d at 106 (same).

Specifically with respect to the transportation of migrant farm workers, Section 1842 "requires a farmer to take reasonable steps to verify that a labor contractor is authorized to transport the workers." *Ricketts*, 32 F.3d at 77. Such steps would include asking to

see the labor contractor's registration certificate. *Saintida v. Tyre*, 783 F.Supp. 1368, 1375 (S.D.Fla.1992); *see also Ricketts*, 32 F.3d at 77 (holding that the defendants had complied with the statute where the defendants had inquired about and were shown the farm labor contractors' valid certificate).

Here, defendants have admitted that Hernandez did not possess a valid certificate of registration authorizing Hernandez to transport migrant workers from 1 February to 10 October 1992, a time prior to and including plaintiffs' employment. (*See* Pls.' Mem. Opp'n Summ.J. Ex. A at 6.) Hernandez's authorization to transport workers apparently expired on 30 January 1992. (*See* J. Taylor Dep. Ex. 3 at 2.) Yet, the issue of whether the Taylors and Taylor Farms took reasonable steps to verify the validity of Hernandez's registration remains. The evidence, specifically the testimony of Jake Taylor, submitted by the parties in support of their respective positions is inconsistent and creates genuine issues of material fact as to whether defendants even asked to see Hernandez's certificate of registration; if so, whether the certificate was valid at such time; and whether defendants knew what vehicles Hernandez was using to transport plaintiff. As such, defendants Taylors and Taylor Farms' motion for summary judgment as to the § 1842 claim is DENIED.

### 3. *North Carolina Common Law*

Plaintiff Jose Barrientos alleges two claims under North Carolina's common law of negligence. With respect to the first claim, plaintiff contends defendants voluntarily assumed a duty to transport plaintiff and failed to exercise reasonable care in doing so. Defendants the Taylors and Taylor Farms make no argument with respect to liability on this basis. As such, their motion for summary judgment on this claim is DENIED.

Plaintiff's second claim under the North Carolina common law of negligence is more difficult to discern. It appears, however,

---

**5.** That plaintiffs did not respond with evidentiary material to rebut defendants' materials does not mandate that summary judgment be entered against them. Because defendants as the moving parties failed to meet their initial burden, plain-

tiffs were not required to present opposing evidentiary material. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970).

**386**

that plaintiff is asserting two alternative "theories" of liability: first, that the Taylors and Taylor Farms were negligent in their hiring and retention of Hernandez, and second, that the Taylors and Taylor Farms are liable for the negligence of Hernandez based on their control over him.

■■■■■ · As to the negligent selection and retention theory, defendants appear to argue for summary judgment on the grounds that Hernandez was an independent contractor. Defendants are correct that under North Carolina law, if Hernandez was an independent contractor, a cause of action for negligent selection and retention cannot be maintained. *See Dunleavy v. Yates Constr. Co.*, 106 N.C.App. 146, 416 S.E.2d 193, 197 ("North Carolina law, however, does not currently recognize claims of an injured employee of an incompetent or unqualified independent contractor against a party for its negligent selection or retention of the independent contractor."), *review denied*, 332 N.C. 343, 421 S.E.2d 146 (1992). *But see O'Carroll v. Roberts Indus. Contractors, Inc.*, 119 N.C.App. 140, 457 S.E.2d 752, 755 (noting exceptions to the non-liability rule for injuries to independent contractor's employees as including "situations involving negligent hiring and/or retention of the subcontractor by the general contractor"), *review denied*, 341 N.C. 420, 461 S.E.2d 760 (1995). However, if Hernandez is an employee of defendants, an issue which the court does not reach in this order, a negligent selection and retention claim is cognizable. *See Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222, 239 (1991) (employee may recover against employer for fellow employee's negligence on theory of negligent selection and retention).

■■■■■ As to plaintiff's "control" theory of liability, defendants argue that they lacked the necessary control over Hernandez to hold them liable. One who employs an independent contractor is generally not liable for injuries sustained by the independent contractor's employee, *O'Carroll*, 457 S.E.2d at 755. It is the duty of the independent contractor to provide his employees with a safe place in which to work and to guard against dangers of the work. *Id.* Even so, liability

may arise where the employer retains the right to control the manner and method of the independent contractor's work. *Id.*, 457 S.E.2d at 755–56; *see also Ricketts*, 32 F.3d at 77.

■■■■ Assuming arguendo that Hernandez is an independent contractor and based on the court's analysis in section IIA, *supra*, defendants so "interfered" with Hernandez's work so as to retain control sufficient to impose liability. *Cf. O'Carroll*, 457 S.E.2d at 756 (holding control did not exist where defendant employer "did not supervise, participate in, or 'police' the work done by" the independent contractor); *Hooper v. Pizzagalli Constr. Co.*, 112 N.C.App. 400, 436 S.E.2d 145, 149 (1993) (recognizing that independent contractor "was free to perform its job according to its own independent skill, knowledge, training, and experience"). Thus, inasmuch as plaintiff alleges a negligence claim against defendants based on defendants' retention of control over the manner in which Hernandez performed his work, defendants' motion for summary judgment is DENIED.

### C. Punitive Damages

■■■■ Plaintiff Jose Barrientos seeks punitive damages against defendants based on their alleged violations of the AWPA and North Carolina's common law of negligence. The AWPA contains no provision for punitive damages. *Ricketts v. Vann*, 861 F.Supp. 404, 406 (E.D.N.C.1993), *aff'd*, 32 F.3d 71 (4th Cir.1994); *see also* 29 U.S.C. 1854(c)(1). Furthermore, the Act's liquidated damages provision is punitive in nature, as Congress enacted this section to deter future violations. *See Howard*, 658 F.Supp. at 435. Accordingly, defendants' motions for summary judgment as to the issue of punitive damages under plaintiff's AWPA claims are GRANTED.

■■■■ To recover punitive damages under the North Carolina common law, "[t]he tort in question must be accompanied by additional aggravating or outrageous conduct." *Rogers v. T.J.X. Cos.*, 329 N.C. 226, 404 S.E.2d 664, 666 (1991). Such conduct

may be shown by wantonness or willful injury. *See id.*

Willful conduct is done purposefully in violation of law, or knowingly of set purpose, or without yielding to reason. Wanton conduct is done wickedly or needlessly, manifesting a reckless indifference to the rights of others.

*Id.*, 404 S.E.2d at 667 (citations omitted). No evidence exists that defendants' conduct has risen to this level. Therefore, defendants' motions for summary judgment as to the issue of punitive damages under the common law claims are ALLOWED.

### III. *CONCLUSION*

For the foregoing reasons, defendants the Taylors and Taylor Farms' motion for summary judgment is DENIED, except as to the issue of punitive damages it is ALLOWED. Defendant Hernandez's motion for partial summary judgment as to the issue of punitive damages is ALLOWED. As this case was reassigned to the undersigned and removed from the trial calendar, this action is hereby set for trial on 29 April 1996 in Raleigh, North Carolina.